[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

----------------------------------------

No. 97-6416

----------------------------------------

D. C. Docket Nos. 94-D-508-N,
94-D-531-N

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
02/09/99
THOMAS K. KAHN
CLERK

LILLIAN D. DUDLEY,
CLARA L. ROBERTSON,

Plaintiff-Appellee,

versus

WAL-MART STORES, INC.,

Defendant-Appellant.

----------------------------------------------------------------
Appeal from the United States District Court
for the Middle District of Alabama
----------------------------------------------------------------
(February 9, 1999)

Before EDMONDSON and BIRCH, Circuit Judges, and MORAN*, Senior District
Judge.

# EDMONDSON, Circuit Judge:

─────────────────────

* Honorable James B. Moran, Senior United States District Judge for the
Northern District of Illinois, sitting by designation.

Defendant Wal-Mart appeals the district court's post-trial denial of its motion for judgment as a matter of law or for a new trial and from the judgments entered against it on claims of violating Title VII. We conclude that the judgments were not against the weight of the evidence, the district court did not err in failing to grant a judgment as a matter of law or a new trial, and the jury issues were ruled on correctly. But we also conclude that Plaintiff Clara Robertson was, as a matter of law, entitled to no punitive damages. Therefore, we affirm the judgment, except for the punitive damages awarded to Plaintiff Clara Robertson.

### Background

Lillian Dudley was hired by Wal-Mart Store 930 in Montgomery, Alabama in March 1992. She was moved around some before becoming a sales associate in the lingerie

2

department.  By 1993 she began expressing an interest in a full-time sales associate position in the domestics department.  This position was eventually given to Lisa Chamberlain, a white woman who had been employed at Wal-Mart Store 930 since 1988.  Dudley says that at all times during her employment she was subject to racial harassment by store comanager Artie Moore and assistant manager Dennis Roberts.[1]  Dudley complained to district manager Don Bost about the harassment.  After she filed a complaint with the EEOC, Dudley was promoted to full-time associate; but the harassment continued.

Clara Robertson was hired by the same store in May 1986 as a sales clerk.  In 1992 she was promoted to manager of the curtains and furniture department.  Months after Robertson was promoted, Artie Moore arrived as  comanager of the store and began to harass Robertson; this harassment included a racial component. Moore eventually soured on Robertson's performance

---

[1]The chain of command within the store hierarchy is store manger,  comanager, assistant manager.

3

as manager. Robertson attempted to discuss the problem with Moore and then with store manager Mark Ferris, but they would not listen. Robertson also tried to complain to district manager Don Bost but, in her words, "he didn't really have time to listen." Later, Robertson, in March 1993, was demoted.

Plaintiffs Lillian Dudley and Clara Robertson filed complaints against Wal-Mart in the Fall of 1994 alleging race discrimination in violation of Title VII. Dudley claimed she was harassed and denied a promotion to full-time sales clerk because of her race. Robertson claimed she was demoted to sales clerk because of her race.

The two lawsuits were consolidated along with eleven separately filed lawsuits by other plaintiffs. In February 1995, Wal-Mart moved for summary judgment on every plaintiff but Dudley. The motion was granted against all plaintiffs except Robertson and three others.[2] For the trial, jury selection was held in

_____

[2]Besides her demotion claim, Robertson's complaint had also included two other claims: racial harassment and failure to promote. These two claims were disposed of by this summary

September 1996, and both sides exercised four of their five peremptory strikes.  The court struck those eight jurors and continued the selection process.

After the eight-member jury was selected, however, the court heard <u>Batson</u> challenges to the eight strikes.  Both sides challenged three of the other side's four strikes.  The court sustained all of Plaintiffs' challenges to Wal-Mart's strikes and two of Wal-Mart's challenges to Plaintiff's strikes.  The court then placed those five temporarily-struck jurors back on the jury, replacing the last five non-struck jurors who had been selected.

Wal-Mart moved for a judgment as a matter of law at the close of the evidence; it was granted against one plaintiff but denied for all others.  The jury then returned judgments of $75,000 in compensatory damages for Dudley, of $50,000 in compensatory damages and $250,000 in punitive damages for Robertson, and for Wal-Mart on the other plaintiffs' claims.  Wal-Mart then filed a

judgment for defendant.

5

renewed motion for a judgment as a matter of law, which was denied. Wal-Mart appealed.

## Discussion

## I. Motion for a JMOL or New Trial

On liability, Wal-Mart contends that it is entitled to a judgment as a matter of law or, in the alternative, to a new trial.[3] Given the verdicts, we must look at the evidence in the light, including all reasonable inferences, most favorable to Plaintiffs.

Dudley made out claims of discrimination on promotion and hostile work environment sufficient to withstand a judgment as a matter of law. Dudley submitted evidence that she was qualified

---

[3]The two will be considered together even though the standards are not the same. A judgment as a matter of law will be granted where "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party . . . ." Fed. R. Civ. P. 50(a). A motion for a new trial may be granted if the district court judge believes the verdict rendered by the jury was contrary to the great weight of the evidence. See Rosenfield v. Wellington Leisure Prods., Inc., 827 F.2d 1493, 1497-98 (11th Cir. 1987). Because "a less stringent standard applies to a motion for a new trial than to a motion for judgment as a matter of law," Holzapfel v. Town of Newburgh, 950 F. Supp. 1267, 1272 (S.D.N.Y. 1997), rev'd on other grounds, 145 F.3d 516 (2nd Cir. 1998), failure to meet the former standard is fatal to the latter.

for the job by virtue of (1) her prior work experience, (2) a recommendation by her supervisor and (3) a recommendation by another Wal-Mart manager. Dudley was rejected for the position, and it was given to a nonminority candidate with similar credentials. Although Wal-Mart set out evidence of nondiscriminatory reasons for not promoting Dudley, Dudley presented sufficient evidence that a reasonable trier of fact could disbelieve Wal-Mart's proffered motives as pretext and conclude that discrimination was the true reason.

While the hostile work environment claim is a closer call, it has support in the record as well. Though more than an isolated incident of unpleasantness is required, Dudley set forth several instances of racial harassment by coworkers, including people in a supervisory capacity. That alone would be sufficient. Dudley, however, appears to have communicated about the harassment to the manager of the store, Mark Ferris, and to the district manager, Don Bost.

Clara Robertson's judgment also withstands Defendant's renewed motion for judgment as a matter of law. Robertson

testified that she was promoted to a department manager's position and then demoted from that position nine months later and that a white employee was promoted to the position. In addition, she testified she was subject to racially discriminatory conduct by the man who ultimately demoted her.

## II. Batson Challenges and Empaneling Issues

We reject Wal-Mart's contention that the district court improperly overruled an equal protection challenge to a juror that Plaintiffs had struck and further that the court then removed non-struck jurors in a manner inconsistent with the Jury Selection and Service Act of 1968.[4]

Batson v. Kentucky, 476 U.S. 79 (1986), requires that peremptory strikes be used in a racially nondiscriminatory manner. A party who believes that the other side is exercising its right to strike in a discriminatory fashion must challenge the strike

---

[4]Wal-Mart contests only the removal of the three jurors replaced after the Batson hearing who would have sat on the jury if the court had heard the Batson challenges as they arose.

and bear the burden of the prima facie case. Id. at 93. After the challenging party meets this burden, the striking party must come forward with a legitimate nondiscriminatory rationale for the strike; the ultimate burden rests on the challenging party to prove purposeful discrimination. Id. at 97.

The district court committed no errors in its application of the Batson procedures, interrogating counsel and making determinations where necessary including whether a proffered nondiscriminatory rationale was mere pretext. We do not agree with Wal-Mart that a district court must always allow the challenging party a chance to rebut the proffered rationale of the striking party. Neither the Supreme Court nor this Court has ever held this step to be an essential element of Batson.[5] See Hernandez v. New York, 500 U.S. 352, 358-59 (1991) (plurality

---

[5]Although we have written on the issue in dicta, see United States v. Bennett, 928 F.2d 1548, 1550 n.1 (11th Cir. 1991), superseded by statute on other grounds as stated in United States v. Smith, 127 F.3d 1388, 1389-90 (11th Cir. 1997), in a concurring opinion, see United States v. Alston, 895 F.2d 1362, 1374 (11th Cir. 1990) (Hatchett, J., concurring), and in a case tried before Batson, see United States v Gordon, 817 F.2d 1538, 1541 (11th Cir. 1987), vacated in part on other grounds, 836 F.2d 1312 (11th Cir. 1988), never have we held a district court's application of Batson to be reversible error solely because the challenging party was not offered an opportunity to rebut the striking party's rationale. Furthermore, we decline to extend what may be the law of other circuits, see United States v. Joe, 928 F.2d 99, 103 (4th Cir. 1991); United States v. Alcantar, 897 F.2d 436, 438 (9th Cir. 1990), to the Eleventh Circuit.

9

opinion) (setting forth three-step Batson process, which does not include challenging party's opportunity to rebut). Even so, the court did entertain Wal-Mart's rebuttals when offered throughout the voir dire.[6]

We do not agree that Batson requires the level of precision and consistency in juror selection that Wal-Mart seeks. Wal-Mart says that the trial court allowed a juror (Larry Curly) to be struck who shared a similar trait with another juror (Lila Bell) who was not struck by Plaintiffs. This circumstance does not automatically prove discrimination or trial court error particularly where, as here, Wal-Mart did not raise this objection at the time of the Batson challenge. Furthermore, the cases Wal-Mart cites on maintaining consistency as among peremptory strikes -- United States v. Stewart, 65 F.3d 918 (11th Cir. 1995) and Hollingsworth v. Burton, 30 F.3d 109 (11th Cir. 1994) -- are distinguishable: in both of the cases this Court was affirming a district court's findings about peremptory challenges at trial instead of, as here, being

---

[6]Wal-Mart has pointed to no instance where the district court rejected its proffer of rebuttal evidence.

asked to overrule the district court's sensitive findings. A district court's <u>Batson</u> determinations are largely findings of fact entitled to great deference on review. <u>See</u> <u>Batson</u>, 476 U.S. at 98 n.21. And, after looking at the record, we do not see clear error here.[7]

## III.  The Jury Instructions

The district court committed no reversible error in its jury instructions.

We agree with Wal-Mart that the instruction on the <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973), framework had the potential to confuse the jury. But, the instruction accurately summarized the complicated law of the Circuit. In the context of the overall jury charge, it was not reversible error. The jury was told what it must determine to find for Plaintiffs; Plaintiffs had the

---

[7]Wal-Mart's claims that the district court's <u>Batson</u> hearing violated the Jury Selection and Service Act by removing three jurors from the jury for reasons other than those articulated in the Act are similarly misplaced:  the Act does not cover the composition of the trial jury but only the initial source list from which juries will be selected, <u>see</u> 28 U.S.C. § 1863(b)(3).

ultimate burden of persuading the jury that Wal-Mart discriminated against Plaintiffs.

The court's instructions on the **McDonnell Douglas** framework ought not to have been given to the jury.   Although "statements [like 'prima facie case' and 'burden of production'] faithfully endeavor[] to track the three-step formulation of **McDonnell Douglas Corp. v. Green**, and **Texas Dep't of Community Affairs v. Burdine**, they create[] a distinct risk of confusing the jury."   **Cabrera v. Jakabovitz**, 24 F.3d 372, 381 (2d Cir. 1994) (citations omitted).  Whether a plaintiff has "made out a prima facie case has no place in the jury room."  **Walther v. Lone Star Gas Co.**, 952 F.2d 119, 127 (5th Cir. 1992).   Furthermore, "the distinction between burden of persuasion and burden of production is not familiar to jurors, and they may easily be misled by hearing the word 'burden' (though referring to a burden of production) used with reference to a defendant in an explanation of that part of the charge that concerns a plaintiff's burden of persuasion."  **Cabrera**, 24 F.3d at 381.  Instead, "[i]f the defendant has met its burden of producing evidence that, if taken as true,

would rebut the prima facie case, <u>a threshold matter to be decided by the judge</u>, the jury need not be told anything about a defendant's burden of production."  <u>Id</u>. at 382 (emphasis added).

We stress that it is unnecessary and inappropriate to instruct the jury on the <u>McDonnell Douglas</u> analysis.  <u>See</u> <u>Gehring v. Case Corp.</u>, 43 F.3d 340, 343 (7th Cir. 1994); <u>Cabrera</u>, 24 F.3d at 380-82; <u>Walther</u>, 952 F.2d at 126-27.  In context, however, the error was harmless because the court gave the critical instruction: "in order to recover each Plaintiff must prove by a preponderance of the evidence that race . . . or sex was a substantial or motivating factor in Defendant's employment decisions."  The court actually repeated this statement several times: for the specific claims by each Plaintiff.  In addition, after all the other instructions and the attorneys' objections, the final charge the court gave before the jury retired was this definitive one: "I remind you again that in order for a Plaintiff to recover she must prove by a preponderance of the evidence that any adverse employment decision complained about in this case was a result of racial or sexual

discrimination. If it was not, then the Defendant is entitled to recover."

Because a "trial judge is given wide discretion as to the style and wording employed in the instructions," see Carter v. Decisionone Corp., 122 F.3d 997, 1005 (11th Cir. 1997), and because the charge taken as a whole did not unduly confuse the jury, we conclude that no reversible error is present here.

## IV. Damages

Wal-Mart correctly contends that Clara Robertson is unentitled to the $250,000 in punitive damages because she has not proved that Wal-Mart the corporation -- as opposed to persons working for Wal-Mart -- was at fault.

Not every unlawful discriminatory act will support an award of punitive damages against an employer. Punitive damages are available under the Civil Rights Act of 1991 only when the employer has engaged in "discriminatory practices with malice or

14

with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a. So, "[p]unitive damages are 'an extraordinary remedy,' to be reserved for egregious cases." Harris v. L & L Wings, Inc., 132 F.3d 978, 982 (4th Cir. 1997) (quoting Stephens v. South Atlantic Canners, Inc., 848 F.2d 484, 489 (4th Cir. 1988)).

For punitive damages, a plaintiff must demonstrate some form of reckless or egregious conduct or otherwise "every employment discrimination claim [could] include a punitive damage award because every employment discrimination plaintiff must demonstrate an intentional unlawful discrimination]." Tincher v. Wal-Mart Stores, Inc., 118 F.3d 1125, 1132 (7th Cir. 1997). Examples of such egregious conduct might include: (1) a pattern of discrimination, (2) spite or malevolence, or (3) a blatant disregard for civil obligations. See Kolstad v. American Dental Ass'n, 139 F.3d 958, 965 (D.C. Cir.) (en banc), cert. granted, 119 S. Ct. 401 (1998) (No. 98-208).

In part because of the egregious-conduct requirement, punitive damages will ordinarily not be assessed against employers with only constructive knowledge of the violations. See Splunge v. Shoney's, Inc., 97 F.3d 488, 491 (11th Cir. 1996). Although an employer may be liable in compensatory damages for the discriminating act of its agent, the employer might not be liable for punitive damages for the same act. Punitive damages are not necessary to compensate the plaintiff. Punitive damages are to punish: to punish those who have actually done wrong and not those who have liability by implication of law only. To get punitive damages, a Title VII plaintiff must show either that the discriminating employee was "high[] up the corporate hierarchy," id. at 491, or that "'higher management' countenanced or approved [his] behavior," Reynolds v. CSX Transp., Inc., 115 F.3d 860, 869 (11th Cir. 1997), vacated on other grounds, 118 S. Ct. 2364 (1998).[8]

---

[8]For punitive damages in this Circuit, the employer must be proved to be at fault. We are aware of the Fifth Circuit's recent decision extending Faragher v. City of Boca Raton, 118 S. Ct.

The evidence in this case allows a finding that store comanager Artie Moore or store manager Mark Ferris or both misused the authority delegated to them by Wal-Mart: they discriminated against plaintiff on account of her race, demoting her. But Wal-Mart is a giant business; the record shows that Wal-Mart has more than 2000 stores. Neither of these men is high enough up Wal-Mart's corporate hierarchy -- **if** they can be said to be in the corporate management hierarchy at all -- to allow their discriminatory acts to be the basis for punitive damages against the corporation. In addition, Robertson has not shown that anyone higher than these two men had notice or knowledge that her demotion was discriminatory. Wal-Mart has a nondiscrimination policy to encourage employees to refer incidents of discrimination up the chain of command until the

2275 (1998), in a way to allow vicarious liability for punitive damages. See Deffenbaugh-Williams v. Wal-Mart Stores, Inc., 156 F.3d 581, 592-93 (5th Cir. 1998). Given the requirement of notice or knowledge for punitive damages in this Circuit, however, we are doubtful that Faragher, which is **not** about punitive damages, can (or was intended to) overrule our pre-Faragher, punitive damages precedent.

matter is resolved. Although Robertson had some contact with district manager Don Bost before the time of her demotion, no evidence suggests that he was informed of the demotion itself, which, by the way, involved only a reassignment of work within the pertinent store and included no reduction in pay or loss of benefits. No evidence was presented that Robertson complained to Bost or to anyone higher about her being demoted on account of her race. In short, Robertson failed to prove that Wal-Mart -- the company -- had the kind of notice and engaged in the kind of egregious acts required to award punitive damages.[9]

## AFFIRMED IN PART AND REVERSED IN PART.

---

[9]Defendant also contends that compensatory damages were not warranted in this case because emotional distress was not competently proved. But Wal-Mart failed to raise the issue in district court; and, thus, it will not be considered on appeal. See Depree v. Thomas, 946 F.2d 784, 793 (11th Cir. 1991) ("We have long held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court.").

Wal-Mart seems to claim the issue was inherent in its motion to set aside the jury verdict for Robertson as against the weight of the evidence. But, while Wal-Mart specifically challenged the appropriateness of punitive damages in its renewed motion for judgment as a matter of law, no reference to compensatory damages or emotional distress was made. Second, Wal-Mart did not object to the jury instruction on compensatory damages; and so the renewed motion was the last opportunity in which a direct objection to compensatory damages could be made. It was critical then that Wal-Mart raise the issue and so provide the district court with a proper basis to face the issue. See generally United States v. Reyes-Vasquez, 905 F.2d 1497, 1500-01 (11th Cir. 1990) (stressing need for clear preservation of errors and limited application of plain-error doctrine).